AMERICAN SECURITIES COMPANY, A CORPORATION, *Appellant*, v. SAMUEL S. GOLDSBERRY, *Appellee*.

### Opinion Filed February 3, 1915.

1. An agreement between a mortgagee and mortgagor for an extension of the time for the payment of the indebtedness secured by the mortgage, based on a valid consideration, is a good defense in a suit to enforce the mortgage.lien before the expiration of the extended time against a purchaser of the mortgaged property who has assumed the mortgage debt.

2. Matters set up in an answer by way of avoidance, but which are not responsive to the bill, must be proved by the defendant, the burden being upon him to establish such matters by a. preponderance of the testimony.

3. The rule making an answer evidence in favor of the defendant, where the case is heard on bill, answer and replication, requires that the answer should be responsive, direct, positive and unequivocal.

4. One who purchases a part of the mortgaged premises and assumes the payment of the entire mortgage debt, has no equitable right to demand that the mortgaged premises be segregated and sold separately.

5. In a proceeding to enforce a mortgage lien, where the mortgage provides for the payment to the mortgagee of attorneys' fees and expenses incurred in enforcing the payment of the mortgage debt, a master may be appointed to ascertain what expenses have been incurred and what is a reasonable attorney's fee in the case, and report such finding to the court, although the time prescribed by the rule for taking testimony has expired.

6. In adjudicating the amount due on a mortgage debt for interest. the rule is, the debt bears interest at the contract rate to the date of the final decree, after which date the total amount found by the decree to be due for principal, interest,

attorneys' fees and expenses bears interest at the rate prescribed by the statute.

7. Reference may be made to the pleadings and orders in a cause to explain any ambiguity in the final decree, and for the purpose of construing its language.

Appeal from Circuit Court for Duval County; D. A. Simmons, Judge.

Decree affirmed.

## STATEMENT.

Appeal from the Court for Duval County, Fourth Judicial Circuit.

Samuel S. Goldsberry filed his bill to foreclose a mortgage in the Circuit Court for Duval County against Charles D. Mills and Etta F. Mills, his wife, and the American Securities Company, a corporation organized under the laws of Florida. The bill alleges that on or about the 19th day of March, A. D. 1910, the defendant Charles D. Mills made and delivered to the complainant his promissory note whereby he agreed to pay to the complainant twelve thousand five hundred dollars, with interest at the rate of seven per cent per annum from date until paid, interest payable semi-annually according to the tenor of six interest coupon notes of four hundred and thirty-seven and 50/100 dollars attached thereto, a copy of the note being attached to the bill as Exhibit "A," and made a part thereof. That on the 4th day of May, 1910, the defendant Charles D. Mills paid on the note Forty-five hundred dollars, thereby reducing the principal sum of said note to Eight thousand dollars. In paragraph two of the bill it is alleged that to secure the

payment of the note with interest the said Charles D. Mills and his wife executed and delivered to the complainant a certain mortgage upon certain lots in the City of Jacksonville; that in and by the mortgage Charles D. Mills covenanted and agreed to pay the said promissory note, with interest thereon when due as provided in the note and the coupons thereto attached, and that the mortgage further provided that the said Mills should pay all the costs and expenses, including reasonable attorneys' fees, incurred by the complainant in the collection and enforcement of the mortgage. The original mortgage being attached to the bill and marked Exhibit "B" and made a part thereof. In paragraph three it is alleged that the complainant by an instrument dated May 2, 1910, released from the lien of the mortgage, the east one hundred feet of fractional block 114 Springfield, being situated near the corner of Main and Tenth street, and fronting fifty-three feet on Main street and one hundred feet on Tenth Street, but that the mortgage remains in full force and effect as to the remaining property described therein.

The fourth paragraph alleges that the indebtedness evidenced by the promissory note set forth in paragraph one, after the credit of forty-five hundred dollars has been made thereon, became due and payable on the 19th day of March, A. D. 1913, and that the same was not paid at maturity, and has not been paid since, but remains as to the eight thousand dollars of the principal of said note, due and payable, that the interest is also due from the 19th day of March, 1913, on said sum, that the said several sums of money have not been paid. The bill then continues as follows:

"5. And your orator alleges further that he is informed and believes, and from such information and belief al-

leges that the defendant the American Securities Company has entered into a contract of purchase of the property described above from the defendants, Charles D. Mills and Etta F. Mills and have been let into possession of said premises by the said Charles D. Mills under the said contract, and claims some interest in the said premises, and your orator is informed and believes, and upon such information and belief alleges that in the said contract of purchase from the said Charles D. Mills and wife, the defendant, the American Securities Company, covenanted and agreed to assume and pay the note and mortgage hereinbefore referred to, to your orator, and that the said defendant, the American Securities Company, has accepted whatever rights they have in and to the property aforesaid, subject to the prior claim of your orator under and by virtue of the mortgage aforesaid.

Therefore, the premises considered, your orator prays that an account may be had and taken by and under the direction of this Honorable Court, to ascertain the amount due your orator on account of said note and mortgage and for attorney's fees, and that a decree may be made and entered, requiring the aforesaid defendants to pay the amount found to be due, or in default thereof that the said mortgaged premises be sold by a master of this court, at public sale, in accordance with law, and further decreeing that after said sale a master's deed be made and executed to the purchaser at said sale and that all defendants and all parties claiming by, through or under them shall be forever barred and foreclosed of all right, title, interest, and right of redemption in and to the aforesaid mortgaged premises." Then follows prayer for subpoena and general relief.

Decree *pro confesso* was entered against C. D. Mills

and Etta F. Mills, his wife. On the 1st day of September, 1913, the defendant American Securities Company filed its answer which, omitting the venue and title, is as follows:

"This defendant, now and at all times hereafter, saving and reserving unto itself all benefit and advantage of exception which can or may be had or taken to the many errors, uncertainties and other imperfections in the said bill contained, for answer thereunto, or to so much and such parts thereof as this defendant is advised it is or are material or necessary for it to make answer unto, answering, says:

1st.    It admits the allegations of the first, second and third paragraphs of said bill.

2nd.    It also admits that it is the equitable owner in fee of said lands described in the bill as East half of fractional Block 113, Springfield, and Lots 5, 6 and 7, in Block 2, Warren; that it is in possession thereof under a contract of purchase between Charles D. Mills of the first part and J. A. Holloman and D. H. McMillan of the second part, assigned to it by said Holloman and McMillan; that it assumed, as did its assignors, to pay the said mortgage indebtedness sought to be collected through said bill. And your orator further says, upon information and belief, that at the time of making said contract of purchase aforesaid between said Mills, the mortgagor in said mortgage, and the assignors of this defendant, to-wit: February 12, 1913, prior to the maturity of said note, the mortgagee, Samuel S. Goldsberry agreed with the mortgagor to extend the time of payment of said note for one year and which said promise was communicated to said Holloman and McMillan by said mortgagor Charles D. Mills, and relying thereon said

Holloman and McMillan assumed the payment of said note and mortgage, and in turn said promise and agreement was communicated to this defendant and relying thereon it assumed the payment of said note and mortgage; wherefore and by reason whereof, this defendant says the said note and the indebtedness evidenced thereby is not due and payable.

And this defendant further answering, denies that the complainant is entitled to the relief, or any part thereof, in said Bill of Complaint demanded, and prays to be dismissed with its reasonable costs and charges in this behalf most wrongfully sustained." The answer was under the seal of the corporation and sworn to by its president.

On the 21st day of October, 1913, the complainant Goldsberry filed his general replication to the answer of the American Securities Company, and on the 22nd day of January, 1914, the complainant filed his praecipe setting down the cause for hearing on Bill, Answer and Replication.

On the 19th day of February, 1914, the court made and entered a decree as follows, omitting venue and title:

"This cause coming on to be heard upon the Bill, the Answer of the American Securities Company, and the Complainant's replication thereto, and the Pro Confesso against the defendants, Charles D. Mills and Etta F. Mills, and the same having argued by counsel:

It is ordered, adjudged and decreed that the equities of the cause are with the complainant and that the complainant is entitled to a decree foreclosing the mortgage set forth in the bill of complaint and is entitled to have this cause referred to a Special Master, to take and state

110    SUPREME COURT OF FLORIDA.

Amer. Securities Co. v. Goldsberry—Statement of Case.

the account of the moneys due to the complainant, and in pursuance of the said right, it is ordered, adjudged and decreed that Carl Noble be and he is hereby appointed Special Master in the above entitled cause, with directions to take and state an account of all moneys due the complainant on the note and mortgage set forth in the bill of complaint, together with a reasonable attorney's fee to be allowed complainant's solicitors for their services in this cause, and to ascertain whether or not there are any other or further sums due the complainant for, or on account of any of the terms or conditions contained in the mortgage set forth in the bill of complaint; said Master to report his findings to this court with all convenient speed.

Done and ordered, this 19th day of February, A. D. 1914.

Daniel A. Simmons, Judge."

On the 24th day of February, 1914, the Special Master filed his report in which he stated that pursuant to notice a hearing was held in his office in Jacksonville on the 23rd day of February, 1914, for the purpose of taking such evidence as might be introduced by the respective parties, that both parties were represented by counsel, and that after receiving in evidence the promissory note signed by C. D. Mills and a receipted bill for an abstract, and hearing the testimony, of two witnesses as to a reasonable attorney's fee, all of which being fully set out in the report, his findings were as follows:

"FINDINGS.

Your Master would further specially report that under and by virtue of said decree he is required to take an

account of moneys due to the Complainant on the note and mortgage set forth in the Bill of Complaint. Your Master finds the accounting to be as follows:

On account of principal..................$8,000.00
Interest for eleven months and four days..   519.55
Solicitors' fees ........................   800.00
Amount paid by complainant for abstract..     8.60
Interest on same........................       .25

Total .......................... ..............$9,328.40

Respectfully submitted,

Carl Noble, Special Master."

To the report was attached the receipted bill for the abstract and the promissory note of C. D. Mills.

On the 14th day of March, 1914, the defendant filed its exceptions to the Master's report, in the following words, omitting the venue, title and formal parts:

"1.   The defendant objects and excepts to the introduction in evidence, (page 2 of the report) of receipted bill for an abstract of the Peninsular Title Company for $8.60, and also moves to strike the same from the record, upon the following grounds:

(a)   The same is immaterial and irrelevant, and is not authorized by the mortgage averred in the bill of complaint to be due;

(b)   The time for taking testimony had expired in this cause on to-wit: January 21st, 1914; and the cause had been set down by complainant for hearing on bill of com-

112    SUPREME COURT OF FLORIDA.

Amer. Securities Co. v. Goldsberry—Statement of Case.

plaint, answer and replication on January 22nd, 1914, and heard by the court on final hearing as thus set down on February 18, 1914.

(c)  That the decree appointing the Special Master, dated February 19th, 1914, does not and did not authorize the Special Master to take or receive any testimony.

2.  The defendant objects and excepts to the testimony of L. W. Baldwin, as to reasonable attorney's fees in this cause, and also moves to strike the same from the record, upon the same grounds set forth in the first exception herein.

3.  The defendant objects and excepts to the testimony of A. H. King, as to reasonable attorney's fees in this cause, and also moves to strike the same from the record, upon the same grounds set forth in the first exception herein.

4.  The defendant objects and excepts to each and every the following items in the findings of the Special Master in stating the account in this cause, to-wit:

Solicitors' fees ...........................$800.00
Amount paid by complainant for abstract....    8.60
Interest on same..........................     .25
                                           _____
                                           $806.25

and moves to exclude and strike the same from the statement of said account, upon the same grounds set forth in the first exception herein."

On the 3rd day of April, 1914, the court made and entered its decree overruling the exceptions filed by the defendant to the report of the Special Master, adjudicat-

ing the amount due and owing to the complainant "on account of the note and mortgage sued on, for principal and interest up to the 24th day of February, 1914, the sum of Eight Thousand Five Hundred and Nineteen and 55/100 Dollars ($8,519.55), and the further sum of Eight and 85-100 Dollars ($8.85) expense incurred by the complainant for the purchase of Abstract of Title, with interest on the same from the time of its payment, and the further sum of Eight Hundred Dollars ($800.00) for the services of Complainant's solicitors in this suit.

And it is further ordered, adjudged and decreed that unless the defendants do forthwith pay to the complainant the said sum of Eight Thousand Five Hundred and Nineteen and 55-100 Dollars ($8,519.55), and the further sum of Eight and 85-100 Dollars ($8.85) hereinbefore referred to, together with interest thereon at the rate of eight per cent. per annum from the 24th day of February, 1914, and the further sum of Eight Hundred Dollars ($800.00) for the services of the solicitors for the complainant, the mortgaged premises described in the bill of complaint, to-wit: The East half of Fractional Block one hundred and thirteen (113), Springfield; and Lots five (5), six (6) and seven (7) in Block Two (2) of Warren, all of which is situated at the northwest corner of Tenth and Hubbard Streets in the City of Jacksonville, and measuring two hundred and nine (209) feet on Tenth Street by four hundred feet on Hubbard Street; and also Lot twenty-four (24) in Block eighteen (18), Campbell's Addition to Jacksonville, and being at the northwest corner of Argyle and VanBuren Streets in the said City of Jacksonville, County of Duval and State of Florida,— be sold by a Master of this court, at public sale before the door of the Court House of Duval County, Florida, on a

legal sales day, during the legal hours of sale, and that said Master, prior to said sale give notice of the same by publication in a newspaper published in Duval County, Florida, for four consecutive weeks prior to said sale, giving the time and place of sale and a description of said mortgaged premises, and that after said sale, said Special Master shall execute and deliver to the purchaser at said sale, a good and sufficient deed for said mortgaged premises.

It is further ordered, adjudged and decreed that after said sale, the said defendants, Charles D. Mills, Etta F. Mills, and the American Securities Company, a corporation, and all persons claiming by, through or under them since the commencement of this suit, shall be forever barred and foreclosed of all right, title, claim, interest, or right of redemption in and to the said mortgaged premises.

It is further ordered, adjudged and decreed that after said sale the said Special Master shall distribute the proceeds arising therefrom as follows:" (then follows the directions as to the disbursement of the proceeds.)

From these decrees the defendant American Securities Company entered its appeal on the 30th day of April, 1914.

*Gibbons, Maxwell, McGarry & Daniel,* for Appellants;

*Axtel & Rinehart,* for Appellees.

ELLIS, J.—*(After stating the facts.)*—Under the first assignment the appellant contends, that the averments in the answer in respect to the alleged agreement of the

complainant, Samuel S. Goldsberry, with the mortgagor to extend the time of payment of the note for one year should have been accepted by the Chancellor as true and the bill dismissed. The answer does not deny the execution of the note by Charles D. Mills, the delivery of it to the complainant, the execution and delivery of the mortgage by Mills and wife to the complainant to secure the payment of the note, nor the assumption by the American Securities Company of the mortgage indebtedness, described in the bill, but avers upon information and belief, that at the time of making the contract of purchase for a part of the mortgaged premises, "between the said Mills, the mortgagor in said mortgage, and the assignors of this defendant, to-wit: February 12, 1913, prior to the maturity of said note, the mortgagee, Samuel S. Goldsberry, agreed with the mortgagor to extend the time of payment of said note for one year and which said promise was communicated to said Holloman and McMillan by said mortgagor Charles D. Mills, and relying thereon said Holloman and McMillan assumed the payment of said note and mortgage, and in turn said promise and agreement was communicated to this defendant and relying thereon it assumed the payment of said note and. mortgage." It is perfectly clear that the principal fact in the quoted part of the answer is the alleged agreement between Goldsberry, the mortgagee, and Mills, the mortgagor and maker of the note, whereby Goldsberry agreed to extend the.time of payment of said note for one year. If the agreement was not made, it would be of no importance that Mills made such representation to Holloman and McMillan and that such representation was made to the American Securities Company. The answer does not allege that Goldsberry told Holloman and McMillan or the American Securities Company that he had made such

agreement with Mills, although Goldsberry is the man against whom the agreement is invoked.

There is no doubt that an agreement between the complainant Goldsberry and the defendant Mills for an extension of the time for the payment of the indebtedness based upon a good consideration would be valid and a good defense. But such an allegation would be an affirmative one of new matter and not responsive to the bill and the burden would have rested upon the defendant to establish it by a preponderance of the testimony. Pinney v. Pinney, 46 Fla. 559, 35 South. Rep. 95; Tyler v. Toph, 51 Fla. 597, 40 South. Rep. 624; Parsons v. Ramsey, 53 Fla. 1055, 43 South. Rep. 503; Griffith v. Henderson, 55 Fla. 625, 45 South. Rep. 1003.

If the complainant had told Holloman and McMillan or the American Securities Company at the time the indebtedness was assumed that there was such an agreement between Goldsberry and Mills, that would have been a good defense upon the principle of estoppel. Such an allegation would have been responsive to the bill, it would have set up matter which discharged the defendant, and would have shown that the matter charging him and discharging him grew out of the same transaction, and would have been evidence in favor of the defendant. Maxwell v. Jacksonville Loan & Imp. Co., 45 Fla. 425, 34 South. Rep. 255. But the rule making an answer evidence in favor of the defendant where a case is heard on bill, answer and replication, requires that it should not only be responsive, but direct, positive and unequivocal. Southern Lumber & Supply Co. v. Verdier, 51 Fla. 570, 40 South. Rep. 676; Kellogg v. Singer Manuf'g Co., 35 Fla. 99, 17 South. Rep. 68. The averments of the answer in this regard were neither direct, positive nor unequivo-

cal. The averments are that Mills told Holloman and McMillan of such an agreement and that "in turn said promise and agreement was communicated to this defendant," etc. By whom it was communicated to defendant, the answer does not state. It is not permissible to infer that it was communicated to it by Goldsberry. The averment that Mills told Holloman and McMillan of the agreement, is immaterial and not responsive to the bill. Goldsberry was not bound by any statement made to Holloman and McMillan or the American Securities Company by Mills, in the absence of any shewing in the answer that Mills acted with authority from Goldsberry.

The cause was heard on Bill, Answer and Replication, the allegations of the bill necessary to entitle the complainant to relief were admitted by the answer. The averment of the answer as to the alleged agreement between Goldsberry and Mills concerning an extension of time for the payment of the indebtedness evidenced by the note, not being responsive to the bill, and being an affirmative allegation of new matter set up by way of defense upon information and belief, was not evidence for the defendant, and the Chancellor rightfully declined to accept it as true. Neither was the averment in the answer as to the communication of such an alleged agreement to Holloman and McMillan by Mills, or the communication of such information to the defendant, evidence for the defendant. Simpson v. Barnard, 5 Fla. 528; 1 Ency. Pl. & Pr. 920.

Under the second subdivision of the first assignment of error, the appellant urges that inasmuch as the bill alleges that the American Securities Company had entered into a contract of purchase of the property de-

scribed in the bill from Charles D. Mills and his wife, and had been let into possession of the premises and claims some interest in the premises and had assumed to pay the note and mortgage, and that the answer set up a contract of purchase of a part of the premises from Mills, and an assignment of the contract to the American Securities Company and an assumption of the indebtedness by the company, that the complainant should have submitted evidence as to the contract alleged in the bill, and that without such evidence the decree was erroneous in view of the averments in the answer.

We do not agree with appellant's solicitors on this point. The assumption of the indebtedness by the appellant placed it in the same situation with reference to the property purchased as the defendant Mills occupied with reference to it. The lien of the mortgage existed upon all of the property without any right of the appellant to insist that one part of the premises or the other should be sold first. The American Securities Company assumed the indebtedness, the debt thereupon became its debt, so far as the mortgagor Mills was concerned, and it was the failure of the American Securities Company to pay it when it became due that brought about the foreclosure. Mills might have complained with some reason, but we think that appellant had no equity as to this feature of the case.

Under the second assignment of error several questions are discussed by appellant's solicitors, relating to the decree of April 3, 1914. It is urged that the appellant's exceptions to the Master's report based upon the allowance of Eight Dollars and sixty cents for an abstract of the property, and Eight Hundred Dollars for solicitors' fees should not have been overruled, but that the excep-

tions on the contrary should have been sustained and the items disallowed.

The bill alleges, and the mortgage which is attached to the bill and made a part of it, recites that the mortgagor should pay all costs and expenses, including reasonable attorneys' fees incurred by the mortgagee in the collection and enforcement of the mortgage. The decree of February 19, 1914, adjudged the equities to be with the complainant, that he was entitled to a foreclosure of the mortgage and to have the cause referred to a Special Master to take and state an account of the moneys due to the complainant. A Special Master was appointed with directions to take and state an account of all moneys due the complainant on the note and mortgage set forth in the bill of complaint, together with a reasonable attorneys' fee to be allowed complainant's solicitors for their services in the cause, and to ascertain whether there were any other or further sums due the complainant for or on account of any of the terms or conditions in the mortgage set forth in the bill of complaint, with directions to the master to report his findings to the court.

The master proceeded to ascertain by the testimony of witnesses what sum should be allowed as a reasonable attorneys' fee for complainant's solicitors. This was objected to by defendant American Securities Company on the grounds that the testimony was immaterial and irrelevant, that the time for taking the testimony had passed and that the decree did not authorize the Master to take such testimony. The complainant offered a receipted bill for eight dollars and sixty cents for an abstract of the property, this was also objected to by

the defendant upon the same grounds. The note was received without objection.

These objections were again urged by the defendant upon exceptions to the Master's report. The Master's report was made on the 24th day of February, 1914, and found the amount due on the note and mortgage to the complainant to be Eight Thousand Dollars for principal, five hundred and nineteen and 55/100 dollars interest for eleven months and four days. Solicitors' fee eight hundred dollars, amount paid by complainant for abstract eight and 60/100 dollars, and twenty-five cents interest on the same, making a total sum of Nine Thousand Three Hundred and twenty-eight Dollars and forty cents. The exceptions to the report also contained a motion to exclude and strike from the statement of the account the amount found by the Master for solicitors' fees, the amount paid by complainant for the abstract and the interest on same, also to strike from the record the testimony as to attorneys' fees.

These objections and exceptions were not well taken. The decree of February 19, 1914, adjudged that the complainant was entitled to the relief prayed. It determined the equities in the cause. The matter of ascertaining the amount due under the terms of the mortgage was a mere matter of detail to be worked out by a Master before a decree could do full and complete justice. There was no objection offered to the introduction of the receipt for the amount paid for the abstract upon the grounds of incompetency, the objection related only to its relevancy or materiality. Expense incurred in obtaining an abstract of the title to the property was a legitimate item of expense under the terms of the mortgage,

and appellant does not show that the item allowed was improper. In taking testimony as to the reasonableness of an attorney's fee to be allowed complainant's solicitors, and receiving evidence as to the expense to which complainant had been subjected by reason of the failure of the mortgagor or his assigns to comply with the agreement and covenants in the mortgage, the Special Master complied with the directions and instructions of the court. It is difficult to perceive how he could have proceeded in any other way. The amount of the attorney's fee, or the amount of expense to which the mortgagee had been subjected because of the failure of the mortgagor or his assigns to perform the agreements on their part to be performed, were not matters upon which the equities of the case were determined, but mere matters of detail to be ascertained by a Master and reported to the court in order that a decree doing full justice might be made and entered. Equity Rule 71 requiring testimony to be taken within three months relates to the testimony to be taken on the issues presented by the bill and answer and replication which must be determined to settle the equities in the cause. The Master's duties are clerical, not judicial. The evidence in examinations before him is required to be taken down in writing and filed with his report. This is for the purpose of enabling the Chancellor to determine the correctness of his findings.

It is contended that the decree of April 3rd, 1914, was erroneous in allowing interest upon the amount reported by the Special Master to be due, at eight per cent per annum from the date of the report, instead of at seven per cent, the rate specified in the note. The amount of the indebtedness on the note and mortgage found by the

Special Master to be due exclusive of interest, should have continued to bear interest at the contract rate to the date of the final decree,' which was April 3, 1914. That is to say, the principal should bear interest at the contract rate to the date of the final decree, after which the total indebtedness, including principal and interest, attorney's fees and expenses adjudged by the decree to have been incurred, bears interest at the rate prescribed by the statute.

The error complained of consists in allowing interest on the amount found by the master to be due at eight per cent per annum from the date of the report instead of at seven per cent, the contract rate, and the period during which the interest was compounded. This error amounted to approximately eleven dollars in the complainant's favor, in a decree involving Nine Thousand Three Hundred and Twenty-eight Dollars. This error was not called to the attention of the court. It was partly corrected by the Master in his report of the sale. It does not appear that the error caused injury to the appellant or handicapped or prevented him from paying or tendering the amount actually due before the sale took place. It does not appear to have in any way affected the price of the property brought at the sale, which was considerably less than the amount adjudged to be due. This small error in the calculation of interest was one which should have been brought to the attention of the Circuit Court. See Brevard Naval Stores Co. v. Commercial Bank of Jacksonville, 67 Fla. 281, 64 South. Rep. 943. If a deficiency decree is entered for the complainant, the correction may be made.

The appellant contends that the decree is erroneous because it does not find from whom the amounts found to be due are due to complainant; that the decree does not require the Special Master to sell the property to the highest bidder; that it does not fix the terms and conditions of the sale, nor does it require notice of the terms to be given.

There is no merit in any of these objections. While the decrees could have been prepared with more clearness than they were, we think that the decrees of February 19th and April 3rd, show that the defendants are required to pay the amount found to be due on the note and mortgage for principal, interest, attorney's fees and expenses, that the latter required a public sale for cash, because the Master was required to distribute the proceeds arising from the sale as directed in the decree, and was required to give notice of the sale by publication in a newspaper.

The decree is affirmed.

TAYLOR, C. J., AND SHACKLEFORD, COCKRELL AND WHITFIELD, JJ., concur.