## GRAY *v.* ROLLO.

1. Set-off is enforced in equity only where there are mutual debts or mutual credits, or where there exists some equitable consideration or agreement between the parties which would render it unjust not to allow a set-off.
2. Where a bankrupt owes a debt to two persons jointly, and holds a joint note given by one of them and a third person, the two claims are not subject to set-off under the Bankrupt Act, being neither mutual debts nor (without more) mutual credits.
3. Where one of two *joint debtors* becomes bankrupt, it seems that the creditor may set-off the debt against his separate indebtedness to the bankrupt, because each joint debtor is liable to him *in solido* for the whole debt; but, if this be conceded, it does not follow that if one of two *joint creditors* becomes bankrupt, the common debtor may set-off against the debt a separate claim which he has against the bankrupt, for this would be unjust to the other joint creditor.
4. A. and B. were joint makers of certain notes, which were transferred to an insurance company. B. and C. held policies in this company which became due in consequence of loss by fire. The company being bankrupt, its assignee claimed the full amount of the notes from A. and B. B. sought to set-off against his half of the liability the claim due to him and C. on the policies of insurance, the latter consenting thereto. *Held*, that this was not a case for set-off within the Bankrupt Act, the two obligations having been contracted without any reference to each other.

APPEAL from the Circuit Court for the Northern District of Illinois; the case being thus:

The Bankrupt Act enacts :*

"That in all cases of *mutual debts* or *mutual credits* between the parties, the account between them shall be stated, and one

---

* 14 Stat. at Large, 526, § 20.

debt set off against the other, and the balance only shall be allowed or paid."

And a statute of Illinois* enacts that—

"All joint obligations shall be taken and held to be joint and several obligations."

These statutes being in force, Moses Gray filed a bill in the court below against William Rollo, assignee in bankruptcy of the estate of the Merchants' Insurance Company of Chicago, to compel a set-off of alleged mutual debts. The insurance company had become bankrupt by the great fire at Chicago, and at that time held two promissory notes for $5555 each, made by the complainant, Gray, jointly with one Gaylord, which the company had received from the payee in the regular course of business. By the fire referred to, Moses Gray, the complainant, and his brother, Franklin Gray, doing business under the firm of Gray Brothers, suffered in the destruction of buildings, and these being insured by the said insurance company for $30,000 on three several policies, the company became indebted to them in the sum named. The complainant alleged in his bill that his just share of liability on the two notes was one-half of the amount, and he desired to have that half extinguished by a set-off of the like amount due on the policies. The money due on the policies was confessedly not due to him alone, but to Gray Brothers. But he alleged that his brother assented to and authorized such appropriation.

The insurance company demurred, and the demurrer being sustained the court dismissed the bill. From its action herein Gray took this appeal.

*Mr. J. S. Norton, for the appellant,* argued that under the statute of Illinois the whole debt, under both notes, which Moses Gray owed to the assignee in bankruptcy, was a several debt; that while it would be inequitable that Gaylord's debt should be paid by the application of a policy of insur-

---

* 1 Gross's Statutes of Illinois, 377.

ance in which he had no interest, the reverse was true in regard to the share of the notes which Moses Gray owed. The counsel cited *Tucker* v. *Oxley*,* in this court, as much in point and binding; a case which he observed was supported by *Wrenshall* v. *Cook*, in the Supreme Court of Pennsylvania,† even more in point, and by other cases in that tribunal.‡

*Mr. A. M. Pence, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

The bill being demurred to, the assent of Franklin Gray to the appropriation asked by the complainant must be taken as true; and the question is, whether set-off can be allowed in such a case as the one presented?

The language of the Bankrupt Act, on the subject of set-off, is: "That in all cases of mutual debts, or mutual credits between the parties, the account between them shall be stated, and one debt set off against the other, and the balance only shall be allowed or paid." It is clear that these claims are not mutual debts. They are not between the same parties. The notes exhibit a liability of the complainant and Gaylord; the policies, a claim of the complainant and his brother. But it is said that by the law of Illinois, all joint obligations are made joint and several; and, therefore, that the complainant is separately liable on the notes, and could be sued separately upon them. Granting this to be so, the debts would still not be mutual. If sued alone on the notes, the claim on the policies, which he might seek to set off, *pro tanto*, against the notes, is a claim due not to him alone, but to him and his brother. His brother's consent that he might use the claim for that purpose would not alter the case. Had his brother's interest been assigned to him before the bankruptcy of the company, and without any view to the advantage to be gained by the set-off, the case would be different.

---

* 5 Cranch, 34.                    † 7 Watts, 464.

‡ Tustin *v.* Cameron, 5 Wharton, 379; Craig *v.* Henderson, 2 Pennsylvania State, 261.

Nor does the case present one of mutual credit. There
was no connection between the claims whatever, except the
accidental one of the complainant's being concerned in both.
The insurance company, so far as appears, took the notes
without any reference to the policies of insurance; and Gray
Brothers insured with the company without any reference
to the notes. Neither transaction was entered into in con-
sequence of, or in reliance on, the other; and no agreement
was ever made between the parties that the one claim should
stand against the other. There being neither mutual debts
nor mutual credits, the case does not come within the terms
of the Bankrupt law. If it can be maintained at all, it must
be upon some general principle of equity, recognized by
courts of equity in cases of set-off; which, if it exist, may
be considered as applicable under an equitable construction
of the act. But we can find no such principle recognized
by the courts of equity in England or this country, unless
in some exceptional cases which cannot be considered as
establishing a general rule. In Pennsylvania, it is true, set-
off is allowed in cases where the claims are not mutual, and,
in that State, under the decisions there, it is probable that
set-off would be allowed in such a case as this. But we do
not regard the rule adopted in Pennsylvania as in accord
with the general rules of equity which govern cases of set-
off. We think the general rule is stated by Justice Story,
in his treatise on Equity Jurisprudence,* where he says:
"Courts of equity, following the law, will not allow a set-off
of a joint debt against a separate debt, or conversely, of a sep-
arate debt against a joint debt; or, to state the proposition
more generally, they will not allow a set-off of debts accru-
ing in different rights. But special circumstances may occur
creating an equity, which will justify even such an interpo-
sition. Thus, for example, if a joint creditor fraudulently
conducts himself in relation to the separate property of one
of the debtors, and misapplies it, so that the latter is drawn
in to act differently from what he would if he knew the

---

* Section 1437.

facts, that will constitute, in a case of bankruptcy, a suffi-
cient equity for a set-off of the separate debt created by such
misapplication against the joint debt. So, if one of the
joint debtors is only a surety for the other, he may, in
equity, set off the separate debt due to his principal from
the creditor; for in such a case the joint debt is nothing
more than a security for the separate debt of the principal;
and, upon equitable considerations, a creditor who has a
joint security for a separate debt, cannot resort to that secu-
rity without allowing what he has received on the separate
account for which the other was a security. Indeed, it may
be generally stated, that a joint debt may, in equity, be set
off against a separate debt, where there is a clear series of
transactions, establishing that there was a joint credit given
on account of the separate debt." Other instances are given
by way of illustration of the principle on which a court of
equity will deviate from the strict rule of mutuality, allow-
ing a set-off; all of them based on the idea that the justice
of the particular case requires it, and that injustice would
result from refusing it; but none of them approaching in
likeness to the case before the court. There is no rule of
justice or equity which requires that Gray Brothers should
be paid in preference to other creditors of the insurance
company, out of the specific assets represented by the notes
of Gray and Gaylord. If the complainant instead of the
insurance company were bankrupt, and the notes were value-
less, his brother and the creditors of Gray Brothers would
think it very hard if the company were allowed to pay the
insurance *pro tanto* with that worthless paper.

The case of *Tucker* v. *Oxley*,* which arose out of the Bank-
rupt Act of 1800, has been pressed upon our attention by
the counsel of the appellant, on the supposition that it is
decisive in his favor. The clause relating to set-off con-
tained in that act† does not materially differ from the cor-
responding clause in the act of 1867. Mutual credits given,
and mutual debts existing, before the bankruptcy, are made

---

* 5 Cranch, 34.                    † 2 Stat. at. Large, 33, § 42.

the ground of set-off in both acts. But the case of *Tucker* v. *Oxley* will be found to differ from the present. There two persons by the name of Moore, being partners, became indebted to Tucker. They afterwards dissolved partnership, and Tucker became indebted to one of them, who continued the business, and who afterwards became bankrupt. Oxley, the assignee, sued Tucker for this debt, but the latter was allowed to set off his claim against the two. The court put the decision upon the ground that the debt due from the two Moores to Tucker could have been collected from the property of either of them, and was provable under the bankruptcy proceedings against the estate of him who became bankrupt, and hence it might be set off against any claim which the bankrupt had against Tucker. The case, therefore, was the same as the case before us would have been if the complainant had been solely entitled to the insurance-money, and if he and not the company had become bankrupt. In such case the company, according to the case of *Tucker* v. *Oxley*, could have set off the notes of the complainant and Gaylord against the claim for insurance. The reciprocal form of this rule would have enabled the complainant to succeed in this case had he been the sole claimant of the money due for insurance. In other words, the case of *Tucker* v. *Oxley* decides that a *joint indebtedness* may be proved and set off against the estate of either of the *joint debtors* who may become bankrupt, and the fact that it may be subject to be marshalled makes no difference. The joint debtors are severally liable *in solido* for the whole debt. But the case does not decide that a *joint claim*, that is to say, a debt due *to* several *joint creditors*, can be set off against a debt due *by* one of them. If a debt is due to A. and B., how can any court compel the appropriation of it to pay the indebtedness of A. to the common debtor without committing injustice toward B.? The debtor who owes a debt to several creditors jointly cannot discharge it by setting up a claim which he has against one of those creditors, for the others have no concern with his claim and cannot be affected by it; and no more can one of several joint creditors, who

is sued by the common debtor for a separate claim, set off the joint demand in discharge of his own debt, for he has no right thus to appropriate it. Equity will not allow him to pay his separate debt out of the joint fund. And if he had the assent of his co-obligees to do this, it would be unjust to the suing debtor, because he has no reciprocal right to do the same thing.

The case before us, therefore, is clearly distinguishable from that of *Tucker* v. *Oxley*, and the ground on which that case was put is not applicable to this.

DECREE AFFIRMED.